# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

BRANCH BANKING AND TRUST COMPANY,

    Plaintiff(s),

v.

JONES/WINDMILL, LLC, et al.,

    Defendant(s).

2:12-CV-452 JCM (GWF)

## ORDER

Presently before the court are cross motions for summary judgment (docs. # 68, 70) by the plaintiff and the collective defendants. Both sides have responded (docs. # 79, 80) and replied (docs. # 88, 89).

Also before the court is plaintiff's motion for a hearing. (Doc. # 69).

Finally before the court is defendants' motion to certify questions of law. (Doc. # 93). Plaintiff has responded (doc. # 94) and defendants have replied (doc. # 95).

**I.**    **Background**

Plaintiff Branch Banking is the successor in interest to non-party Colonial Bank by acquisition of assets from the FDIC as receiver for the bank.

Branch Banking's claims arise out of a January 18, 2006,[1] promissory note secured by a deed of trust executed by defendant Jones/Windmill, LLC ("Jones/Windmill"). The note secured a loan

---

[1] On July 22, 2008, the note was amended to, among other things, extend the maturity date to July 24, 2009.

**James C. Mahan**
**U.S. District Judge**

1  from Colonial Bank in the original principal amount of $1,100.000.  The deed of trust encumbered
2  certain real property located in Clark County, Nevada ("the property").  The individual and corporate
3  defendants executed guaranties, promising to repay the present and future indebtedness of
4  Jones/Windmill.  Those guarantors are defendants Yoel Iny, individually and as trustee of the Y&T
5  Iny Family Trust; Noam Schwartz, individually and as trustee of the Noam Schwartz Trust; and
6  D.M.S.I., LLC.

7  On August 14, 2009, Colonial Bank was closed and the FDIC was named as receiver.  That
8  same day, the FDIC assigned all of its rights, title, and interest in, to, and under the loan documents
9  to Branch Banking.

10  On August 3, 2011, Branch Banking served a demand letter upon Jones/Windmill and the
11  individual guarantors.  Jones/Windmill and the guarantors failed to pay the balance due by the
12  demanded date of August 31, 2011.

13  On February 29, 2012, a trustee's sale was held, and the property was sold to Branch Banking
14  for a credit bid in the amount of $296,000 in partial satisfaction of the note.  According to Branch
15  Banking, the principal balance remaining under the note is $1,099,917.66, with accrued interest at
16  the time of filing in the amount of $28,724.32, for a total of $1,128,641.98.    The amended
17  complaint asserts claims for breach of guaranty, breach of the covenant of good faith and fair
18  dealing, and seeks a deficiency judgment.  (Doc. # 6).

19  **II.   Legal Standard**

20  The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings,
21  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,
22  show that "there is no genuine issue as to any material fact and that the movant is entitled to a
23  judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is
24  "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317,
25  323–24 (1986).

26  In determining summary judgment, a court applies a burden-shifting analysis.  "When the
27  party moving for summary judgment would bear the burden of proof at trial, it must come forward
28

James C. Mahan
U.S. District Judge

- 2 -

1  with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.
2  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue
3  of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213
4  F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is

**James C. Mahan**
**U.S. District Judge**

- 3 -

merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   Discussion**

    *A.*    *Defendants' motion to certify questions of law*

Defendants ask this court to certify the following questions of law to the Nevada Supreme Court:

> 1. How is the "amount of the consideration paid" calculated pursuant to the newly enacted NRS 40.459(1)(c) for a specific loan, not purchased individually for cash, but rather as part of a portfolio of assets in exchange for an assumption of certain liabilities?
>
> 2. Is the calculation of the "amount of the consideration paid" adjusted based on subsequent reimbursements made to an assignee creditor pursuant to a loss-sharing agreement?

(Doc. # 93, p. 2).

For the reasons discussed below, the court finds that NRS 40.459(1)(c) is not applicable to the instant assignment. Accordingly, the "amount of the consideration paid" is not a factor here and certification as to both questions is unnecessary.

    *B.*    *Deficiency scheme*

Following a trustee's sale, Nevada law entitles a creditor to a deficiency judgment "if it appears from the sheriff's return or the recital of consideration in the trustee's deed that there is a deficiency of the proceeds of the sale and a balance remaining due to the judgment creditor or the beneficiary of the deed of trust, respectively." NRS 40.455(1). This statutory scheme also requires that the court, prior to awarding a deficiency judgment, hold a hearing regarding the fair market value of the property as of the date of the trustee's sale. NRS 40.457(1).

Following the hearing, the court must award a judgment for the lowest amount amongst the following calculations:

> (a) the amount by which the amount of indebtedness which was secured exceeds the fair market value of the property sold at the time of the sale, with interest from the date of the sale;
>
> (b) the amount which is the difference between the amount for which the property was actually sold and the amount of the

    indebtedness which was secured, with interest from the date of the sale; or

    (c) if the person seeking the judgment acquired the right to obtain the judgment from a person who previously held that right, the amount by which the amount of the consideration paid for that right exceeds the fair market value of the property sold at the time of sale or the amount for which the property was actually sold, whichever is greater, with interest from the date of sale and reasonable costs.

*See* NRS 40.459(1)(a)-(c).

    *C.*  *Liability under the loan and guaranty agreements*

As a preliminary matter, plaintiff asserts, and defendants do not refute, that the loan documents and guaranty agreements are valid contracts, and that defendants failed to pay the agreed-upon amount. Instead, defendants assert that Branch Banking has failed to demonstrate it has standing to enforce payment on this particular loan. The court disagrees.

The purchase and assumption agreement executed between the FDIC and Branch Banking was essentially a "bulk assignment" which transferred to Branch Banking the FDIC's interest in a multitude of assets it received from Colonial Bank. The kinds of assets excepted from the assignment are described in section 3.5 of the purchase and assignment agreement. (*See* doc. # 80, ex. 2). The Jones/Windmill loan is clearly not an asset that the agreement intended to except, and there is no basis for defendants' suggestion that this particular loan was not contemplated by the assignment.

The court also rejects defendants' argument that Branch Banking is collaterally estopped from relying on the purchase and assumption agreement as evidence it has standing to enforce this loan. In support of this argument, defendants point to a case in Nevada state court where Judge Gonzalez found that the agreement was not sufficient to demonstrate that Branch Banking held the right to a specific asset in that case.

The doctrine of issue preclusion "prevents re-litigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding." *Shaw v. Hahn*, 56 F.3d 1129, 1131 (1995). The Jones/Windmill loan was not at issue in that case, and Branch Banking's right to collect on it was not "actually and necessarily" litigated. Branch Banking is clearly

James C. Mahan
U.S. District Judge

- 5 -

not estopped from asserting it holds the right to pursue a deficiency judgment on this loan.

In addition to the fact that this argument fails as a matter of law, Judge Gonzalez's holding was based on her finding that the purchase and assumption agreement was not previously disclosed, and there was no supporting documentation. Here, Branch Banking has timely disclosed the agreement, and has further supported it through a declaration from its corporate designee, Thomas Brent Hicks. Specifically, Mr. Hicks confirms that the purchase and assignment agreement transferred the instant loan as part of the bulk assignment. He has further confirmed that the Jones/Windmill loan was included by producing a redacted schedule 4.15B, which lists it as an asset that was transferred as part of the bulk assignment.

Mr. Hicks' declaration authenticates those documents, and the court may consider them. Although defendants assert the schedule 4.15B cannot be relied upon, they fail to proffer any evidence contradicting its contents.[2] Notably, defendants do not argue that the schedule or the purchase and assumption agreement have been forged or otherwise altered in a manner which would render them inadmissable.[3]

Accordingly, the court finds Branch Banking has satisfied its burden in proffering evidence demonstrating its right to pursue the instant loan, and rejects defendants' "standing" argument.

D.  Applicability of NRS 40.459(1)(c)

Defendants argue next that, even if the court finds Branch Banking has standing, it has failed to provide evidence of the consideration paid as required by NRS 40.459(1)(c), which is fatal to its claims.

This court and others within this district have held that this particular subsection cannot apply retroactively to assignments made prior to the statute's effective date of June 10, 2011. *See, e.g.,*

---

[2] Mr. Hicks' testimony and the schedule 4.15B have been repeatedly relied upon by this court and others in sister proceedings and the court finds no reason now to question their veracity or reliability. *See, e.g., Branch Banking & Trust Co. v. Frank, et al.*, 2013 WL 5428112 (D. Nev. Sept. 26, 2013).

[3] These are the same arguments defendants' counsel put forth in *Branch Banking & Trust Co. v. Regena Homes, LLC, et al*, 2:12-cv-451-RCJ-GWF (D. Nev. July 23, 2014) which Judge Jones rejected, finding that they were not made in good faith but were instead made for purposes of delay. (*Id.* doc. # 110 at p. 5).

James C. Mahan
U.S. District Judge

- 6 -

*Branch Banking & Trust Co. v. Desert Canyon Phase II, LLC, et al*, 2014 WL 2468610 (D. Nev. June 2, 2014)(retroactive application to assignments made pre-enactment would violate the Contracts Clause and likely the Due Process Clause of the United States Constitution); *Eagle SPE NV I, Inc. v. Kiley Ranch Communities, et al*, 2014 WL 1199595 (D. Nev. Mar. 24, 2014); *Branch Banking & Trust Co. v. Pahrump 194, LLC, et al*, case no. 2:12-cv-1462-JCM-VCF (D. Nev. July 30, 2014).

Because the effective date of the assignment here was August 14, 2009, section (1)(c) does not apply. Accordingly, the parties' arguments regarding the amount paid in consideration of the loan and the sufficiency of the evidence in support thereof are moot and need not be resolved.

**IV.   Conclusion**

The court finds that plaintiff has provided sufficient evidence to establish all essential elements of its claims. However, the court recognizes that it may not make a ruling regarding the fair market value at the time of the trustee's sale prior to holding a hearing under NRS 40.457(1). *Am. Gen. Fin. Corp. v. First Commercial Title, Inc.*, 524 P.2d 1270, 1271 (1974). Therefore plaintiff's motion for summary judgment will be granted except as to the issue of fair market value at the time of sale.

In addition, the court finds that NRS 40.459(1)(c) does not apply retroactively to these facts. As a result, the deficiency amount will be determined as calculated under only NRS 40.459(1)(a) and (b).

Though NRS 40.457(2) allows the court to appoint an appraiser, the court is within its discretion to decline to do so and instead require the parties themselves to submit sufficient evidence on the issue. *See Unruh v. Streight*, 615 P.2d 247, 249 (1980). The court declines to appoint an appraiser at this time.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for summary judgment (doc. # 68) be, and the same hereby is, GRANTED as to all issues except the fair market value of the property at the time of the trustee's sale.

**James C. Mahan**
**U.S. District Judge**

- 7 -

IT IS FURTHER ORDERED that plaintiff's motion for a deficiency hearing (doc. # 69) be, and the same hereby is, GRANTED to the extent it requests a valuation hearing.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (doc. # 70) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendants' motion to certify questions of law (doc. # 93) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the parties shall have thirty (30) days from entry of this order to file opening briefs of not more than ten (10) pages concerning the fair market value of the property at issue at the time of the trustee's sale. The parties shall then have ten (10) days after the filing of opening briefs to file response briefs of not more than five (5) pages. Thereafter, the court will set a fair market valuation hearing pursuant to NRS 40.457(1).

DATED August 5, 2014.

_____
**UNITED STATES DISTRICT JUDGE**