UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BRANCH BANKING AND TRUST COMPANY,<br><br>                            Plaintiff(s),<br><br>     v.<br><br>JONES/WINDMILL, LLC, et al.,<br><br>                            Defendant(s). | Case No. 2:12-CV-452 JCM (GWF)<br><br>ORDER |

       Presently before the court is defendants' motion to reconsider. (Doc. # 98). Plaintiff has filed a response, (doc. # 107), and defendants have replied (doc. # 111).

       Also before the court is plaintiff's motion for attorneys' fees. (Doc. # 108). Defendants have filed a response, (doc. # 112), and plaintiff has replied (doc. # 113).

**I.    Background**

       Plaintiff Branch Banking and Trust Company ("Branch Banking") is the successor in interest to non-party Colonial Bank by acquisition of assets from the Federal Deposit Insurance Corporation ("FDIC") as receiver for the bank.

       Branch Banking's initial claims arose out of a January 18, 2006, promissory note secured by a deed of trust executed by defendant Jones/Windmill, LLC ("Jones/Windmill"). The note secured a loan from Colonial Bank in the original principal amount of $1,100,000. The deed of trust encumbered certain real property located in Clark County, Nevada. The individual and corporate defendants executed guaranties, promising to repay the present and future indebtedness of Jones/Windmill. Those guarantors are defendants Yoel Iny, individually and as trustee of the

**James C. Mahan**
**U.S. District Judge**

Y&T Iny Family Trust; Noam Schwartz, individually and as trustee of the Noam Schwartz Trust; and D.M.S.I., LLC.

On August 14, 2009, Colonial Bank was closed and the FDIC was named as receiver. That same day, the FDIC assigned all of its rights, title, and interest in, to, and under the loan documents to Branch Banking.

On August 3, 2011, Branch Banking served a demand letter upon Jones/Windmill and the individual guarantors. Jones/Windmill and the guarantors failed to pay the balance due by the demanded date of August 31, 2011.

On February 29, 2012, a trustee's sale was held, and the property was sold to Branch Banking for a credit bid in the amount of $296,000 in partial satisfaction of the note. According to Branch Banking, the principal balance remaining under the note is $1,099,917.66, with accrued interest at the time of filing in the amount of $28,724.32, for a total of $1,128,641.98.

Branch Banking brought a complaint asserting claims for breach of guaranty, breach of the covenant of good faith and fair dealing, and seeking a deficiency judgment. (Doc. # 6). Plaintiff and defendants filed cross motions for summary judgment. (Docs. ## 68, 70).

Defendants claimed that Branch Banking did not have standing to enforce payment on the loan. Specifically, defendants argued that plaintiff was collaterally estopped from relying on the purchase agreement that plaintiff executed with the FDIC as evidence that plaintiff had a specific right to the loan. This court found that Branch Banking was not estopped from asserting it holds the right to pursue a deficiency judgment on the loan. (Doc. # 97).

Alternatively, defendants argued that Branch Banking had failed to provide evidence of the consideration paid as required under NRS 40.459(1)(c). This court held that this subsection does not apply retroactively to assignments made prior to the statute's effective date of June 10, 2011. Because the effective date of the assignment was August 14, 2009, this court granted plaintiff's motion for summary judgment as to all issues except the fair market value of the property at the time of the trustee's sale. (Doc. # 97). In addition, this court denied defendants' motion for summary judgment. (Doc. # 97).

This court also denied defendants' motion to certify questions of law, (doc. # 97), finding certification unnecessary in light of the fact that NRS 40.459(1)(c) was not applicable to the assignment in this case. Defendants subsequently brought this motion to reconsider. (Doc. # 98).

## II. Legal standard

A motion for reconsideration "should not be granted, absent highly unusual circumstances." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Reconsideration "is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

Federal Rule of Civil Procedure 59(e) "permits a district court to reconsider and amend a previous order." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). However, "the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Id.*

## III. Discussion

Defendants do not argue that there is newly discovered evidence that warrants reconsideration. Rather, defendants argue that "new persuasive law" warrants reconsideration, and that this court's prior order was clearly erroneous when it decided that plaintiff was not collaterally estopped from relying on the purchase agreement between it and the FDIC. (Doc. # 98). Furthermore, plaintiff argues that defendants should be sanctioned in the form of attorneys' fees for filing the motion. (Doc. # 108). These arguments are addressed in turn.

> *a) Whether the Southern Highlands ruling constitutes an "intervening change in controlling law" that necessitates reconsideration*

Defendants argue that Judge Du's ruling in *Eagle SPE NV 1, Inc. v. S. Highlands Dev. Corp.*, (the "*Eagle* order"), constitutes "new persuasive law" that warrants reconsideration of the matter. No. 2:12-CV-00550-MMD, 2014 WL 3845420 (D. Nev. Aug. 5, 2014). In particular, defendants argue that the *Eagle* order held that NRS 40.459(1)(c) applies to assignments that occur

James C. Mahan
U.S. District Judge

- 3 -

1  after the effective date of the statute, and that the assignment in the instant case took place after
2  such date.  This argument must fail for several reasons.
3    First, as defendants appear to acknowledge, the *Eagle* order is not controlling on this court.
4  As such, it does not constitute an "intervening change in controlling law," which necessitates
5  reconsideration.
6    Second, the crux of defendants' argument appears to be contesting this court's prior factual
7  determination that the assignment of the Jones/Windmill loan took place on August 14, 2009.
8  Defendants argue that the assignment took place on November 13, 2012, as part of a "specific
9  assignment."  (*See* doc. # 98, exhibit B).  This would be, of course, after the statute became
10 effective on June 10, 2011.  However, this court previously held that the assignment took place as
11 part of a "bulk assignment" on August 14, 2009.  Indeed, the "specific assignment" states in its
12 recitals the following:

> G. Pursuant to the terms of a Purchase and Assumption Agreement Whole Bank All Deposits (the "Agreement") between the Federal Deposit Insurance Corporation, Receiver for Colonial Bank, and Branch Banking And Trust Company dated as of August 14, 2009, Assignee purchased and assumed the Loan and the Loan Documents.

(Doc. # 98, exhibit B).  The court need not address the issue further.  Defendants attempt to reargue a factual determination made by this court.  Defendants simply claim that an intervening change in law would change the outcome of this case if the court were to reconsider that previous factual determination.  However, the *Eagle* order cited by defendants does not discuss how or when the FDIC assigned the Jones/Windmill loan to Branch Banking.  Indeed, the *Eagle* order states that "the transaction in question *is not* the assignment from the FDIC to [Branch Banking]; rather, the transaction at issue is the assignment from [Branch Banking] to Eagle, which occurred after Subsection (1)(c) became effective."  *Eagle SPE NV 1, Inc.*, 2014 WL 3845420, at *6 (emphasis added).  If anything, this suggests that the initial transaction took place before the subsection became effective.

James C. Mahan
U.S. District Judge

- 4 -

The *Eagle* order is not controlling upon this court. Therefore, defendants have failed to establish that there has been an intervening change in controlling law that necessitates reconsideration of the matter.

> *b) Whether this court's conclusion that Branch Banking was not collaterally estopped from relying on the purchase agreement was clearly erroneous*

Defendants argue that "the same [purchase] agreement . . . , the same corresponding exclusions of Section 3.5 thereof and the same blank schedules" were at issue in *Murdock v. Rad*, No. 08A574852, 2010 WL 9564700 (Nev. Dist. Ct. June 18, 2010). Defendants claim that in that case, Judge Gonzalez conducted the necessary interpretive steps, and concluded that it was not possible to determine the intent of the FDIC as to whether a particular loan was intended to be included or excluded in the assignment. Therefore, defendants claim that it was clearly erroneous for this court to conclude that the Jones/Windmill loan was assigned to Branch Banking.

"The doctrine of issue preclusion prevents relitigation of issues *actually litigated and necessarily decided*, after a full and fair opportunity for litigation, in a prior proceeding." *Shaw v. Hahn*, 56 F.3d 1128, 1131 (9th Cir. 1995) (emphasis added). In *Murdock*, a different loan was at issue and different evidence (or a lack of evidence) was before that court in determining whether the loan documents were included or excluded under the purchase agreement.

Defendants appear to concede that the Jones/Windmill loan was not at issue in *Murdock*. Thus, it is clear that the issue of whether the Jones/Windmill loan was assigned to Branch Banking was not litigated or decided. This court does not interpret Judge Gonzalez's opinion to foreclose the admission of evidence relating to the transfer of each and every loan (including those loans not at issue in that case). This court finds no clear error in the determination that Branch Banking was not collaterally estopped from relying on the purchase agreement.

Furthermore, even apart from the purchase agreement, Branch Banking provided other evidence that the Jones/Windmill loan was included in the "bulk assignment," such as Mr. Hicks' testimony and the schedule 4.15B. As noted in the August 5, 2014, order, this court has relied upon this evidence in the past, and this court finds no reason to question the veracity or reliability

of this evidence now. Thus, this court also finds no clear error in the determination that the assignment of the Jones/Windmill loan took place on August 14, 2009.

   *c) Whether plaintiff should be awarded attorneys' fees under 28 U.S.C. § 1927*

Plaintiff argues that the defendants should be sanctioned pursuant to 28 U.S.C. § 1927 by awarding plaintiff attorneys' fees accrued in preparing the opposition to defendants' motion. The statute reads in relevant part as follows:

> Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (2012). The statute applies only to "unnecessary filings and tactics once a lawsuit has begun." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996). Such "unnecessary filings" are to be contrasted with the "initial pleadings," which are beyond the reach of § 1927. *Id.* As the statute is intended to sanction efforts made to "multiply or prolong proceedings after the complaint is filed," a motion to reconsider is within the statute's scope. *See id.; see also Estate of Blas Through Chargualaf v. Winkler*, 792 F.2d 858, 861 (9th Cir. 1986) (finding that a motion to reconsider was not an "unreasonable and vexatious" multiplication of proceedings where the motion was not frivolous or made in bad faith).

In addition, "[s]anctions pursuant to section 1927 must be supported by a finding of subjective bad faith." *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Id.*

However, a motion for attorneys' fees must comply with Federal Rule of Civil Procedure 54(d). Rule 54(d) requires that the moving party: (i) file the motion no later than 14 days after the entry of judgment; (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award; (iii) state the amount sought or provide a fair estimate of it; and (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim

**James C. Mahan**
**U.S. District Judge**

- 6 -

is made. Fed. R. Civ. P. 54(d)(2). Local Rule 54–16(b) further requires that the motion include the following components:

1. A reasonable itemization and description of the work performed;
2. An itemization of all costs sought to be charged as part of the fee award and not otherwise taxable pursuant to LR 54–1 through 54–15;
3. A brief summary of the following:
   A. The results obtained and the amount involved;
   B. The time and labor required;
   C. The novelty and difficulty of the questions involved;
   D. The skill requisite to perform the legal service properly;
   E. The preclusion of other employment by the attorney due to acceptance of the case;
   F. The customary fee;
   G. Whether the fee is fixed or contingent;
   H. The time limitations imposed by the client or the circumstances;
   I. The experience, reputation, and ability of the attorney(s);
   J. The undesirability of the case, if any;
   K. The nature and length of the professional relationship with the client;
   L. Awards in similar cases; and,
4. Such other information as the Court may direct.

LR 54–16(b). In addition, the motion for attorneys' fees must be accompanied by an affidavit from the attorney responsible for the billings in the case to authenticate the information contained in the motion, and to prove that the fees and costs sought are reasonable. LR 54–16(c). A failure to provide the documentation required by LR 54–16(b) and (c) in a motion for attorneys' fees "constitutes a consent to the denial of the motion." LR 54–16(d).

Although plaintiff seeks attorneys' fees sufficient to cover the costs of preparing its opposition to the motion for reconsideration, plaintiff has failed to follow the procedures outlined in the local rules for submitting a motion for attorneys' fees. Plaintiff does not address any of the queries posed by LR 54–16(b) in its motion, let alone even acknowledge the local rules themselves. A failure to provide the documentation required by LR 54–16(b) and (c) in a motion for attorneys' fees "constitutes a consent to the denial of the motion." Therefore, this court will deny plaintiff's motion for attorneys' fees.

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 7 -

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motion for reconsideration, (doc. # 98), is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for attorneys' fees, (doc. # 108), is DENIED.

DATED March 3, 2015.

                              UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**